Robert Hamparyan, Esq., State Bar No. 181934
LAW OFFICES OF ROBERT HAMPARYAN
275 West Market Street
San Diego, CA 92101
Ph: (619) 550-1355 • fax: (619) 550-1356

George R. Kindley, Esq., State Bar No. 213295
Henry Harmeling, Esq., State Bar No. 207673
THE KINDLEY FIRM, APC
275 West Market Street
San Diego, CA 92101
ph: (619) 550-1313 • fax: (619) 550-1315

Attorneys for Plaintiffs PAUL DEUTZ and NANCY DEUTZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DEUTZ, an individual; and NANCY DEUTZ, an individual,<br><br>      as Plaintiffs,<br><br>      vs.<br><br>USAA CASUALTY INSURANCE COMPANY, INC., a corporation; AUTO INJURY SOLUTIONS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>      as Defendants. | Case No.: 16-CV-2096-LAB-DHB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>   **1. BREACH OF CONTRACT;**<br>   **2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>   **3. NEGLIGENCE;**<br>   **4. NEGLIGENT MISREPRESENTATION; and**<br>   **5. WILLFUL MISCONDUCT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs PAUL DEUTZ and NANCY DEUTZ hereby allege as follows:

## I.

## GENERAL ALLEGATIONS

1.    At all time mentioned herein, plaintiffs PAUL DEUTZ and NANCY DEUTZ ("Plaintiffs") were citizens of the United States of America and residents of the county of San Diego, State of California.

2.      Plaintiffs have been informed and believe and thereon allege that at all times mentioned herein, defendant USAA CASUALTY INSURANCE COMPANY, INC. ("USAA") is a corporation duly licensed and authorized to conduct the business of insurance under the laws of the State of California.

3.       Plaintiffs have been informed and believe and thereon allege that at all times mentioned herein, defendant AUTO INJURY SOLUTIONS, INC. ("AIS") is a corporation duly licensed and authorized to conduct business under the laws of the State of California.

4.      Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrence herein alleged, and that Plaintiffs' damages were proximately and legally caused by those defendants. Each reference in this complaint to "defendant," "defendants," or specifically named defendants refers to all named defendants and those sued under fictitious names.

5.      Plaintiffs are informed and believe that each of the Defendants is responsible in some manner, either by act or omission, strict liability, fraud, negligence, breach of contract, breach of express/implied warranty, negligence per se, res ipsa loquitor, respondeat superior, employment, agency, breach of statute, joint tortfeasor, or otherwise, for the occurrences alleged herein, and that Plaintiffs' damages were proximately and legally caused by the conduct of the Defendants.

6.      Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of these Defendants, including Defendants sued under fictitious names, was the agent, employee, alias and/or alter ego of each of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of such agency, alias, alter ego and/or employment, and with the actual knowledge, consent and approval of the co-defendants. Each Defendant's conduct was specifically ratified and approved by each co-defendant.

7.     Venue is proper in the County of San Diego, State of California, because the Defendants may be sued in any county in this state per the holding of *Easton v. Superior Court* (1970) 12 Cal. App. 3d 243. In addition, the automobile accident which gave rise to the claim for medical pay benefits by Plaintiffs against defendant USAA, under Policy number 00216 99 39C 7101 2, and against defendant AIS as USAA's partner, occurred in San Diego County. The damages incurred by Plaintiffs are believed to be well in excess of $75,000.00, the jurisdictional minimum of this Court.

## II.

## GENERAL FACTS RELEVANT TO PLAINTIFFS' CAUSES OF ACTION

8.     Plaintiffs hereby incorporate by reference paragraphs 1 through 7 as though fully set forth herein.

9.     At all times herein mentioned defendant USAA issued to Plaintiffs a written automobile insurance policy, policy number 00216 99 39C 7101 2, with a policy period from August 20, 2014 to February 20, 2015 (hereinafter the "POLICY"), which included medical payment coverage. A true and correct copy of the POLICY is attached hereto as **Exhibit "A."**

10.     Since 2003, USAA has been exclusively utilizing the services of defendant AIS to deny, in whole or in significant part, payments to its members on first-party claims for medical payments ("Med Pay"). USAA and AIS have been sued numerous times related to AIS's inappropriate and illegal adjustment of Med Pay claims. Nevertheless, USAA continues to utilize its partner, AIS, to unfairly adjust its claims, and did so again on Plaintiffs' Med Pay claim.

11.     Since 2003, USAA has tasked AIS with utilizing the following mechanisms to deny, in whole or in part, its members' first-person injury claims:

- the causal relatedness of the diagnosis and care to the accident at issue;
- the medical necessity and appropriateness of the care;
- in appropriate cases, the  reasonableness of the billed charges for the care provided;
- adherence to standard filing and medical coding practices; and

3

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

- compliance with applicable state-mandated fee schedules and related rules.

12.    As a pattern and practice, AIS engages out-of-state practitioners who are not licensed in the state where the care took place to deny, in whole or in part, the claims of USAA's first-party claimants. AIS, with USAA's explicit knowledge and approval, utilizes a computer program with template forms to deny charges, under the guise that the charges have actually been reviewed by AIS's out-of-state medical practitioner. In the instant case, Plaintiffs' claims were denied by AIS's computer program and/or a Doctor of Osteopathy from New Jersey. The bulk of Plaintiffs' claims were denied on purely specious grounds. AIS's out-of-state medical practitioner, Dr. Robert Ponzio, did exactly as AIS and USAA asked of him, scheming to deny and/or delay payment to the severe detriment of Plaintiffs.

13.    Prior to purchasing the POLICY from defendant USAA, defendant USAA knowingly made several false representations to Plaintiffs. Defendant USAA intended for Plaintiffs to rely on its false promises in inducing them to purchase the POLICY. These false representations included, but were not limited to, the following: (i) in the event that a claim is made, defendant USAA will operate in Plaintiffs' best interests; (ii) in the event of a claim, USAA will not put its interests ahead of the interests of its insureds; (iii) in the event that a claim is made, defendant USAA will promptly resolve the claim; (iv) defendant USAA will provide you coverage of fifty thousand dollars ($50,000) per person for Med Pay claims; (v) in providing its insureds with fifty thousand dollars ($50,000) per person for Med Pay claims, USAA will adjust those claims fairly and promptly, and will not unreasonably deny or delay payment of those claims; (vi) in the event that a claim is made, USAA and/or its partner, AIS, will actually review the medical charges submitted; (vii) defendant USAA will be honest with Plaintiffs; (viii) defendant USAA will not provide its insureds with low-ball offers; (ix) defendant USAA is an "exceptional" insurance company (unlike some of its competitors).

14.    Unfortunately, and in spite of its false promises which were made to gain Plaintiffs' business and make more money, defendant USAA knew at the time it made the false promises to Plaintiffs that: (i) defendant USAA had policies and procedures in place which worked to the detriment of its insureds, including its undisclosed partnership with AIS whereby

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

USAA and AIS work collaboratively to reduce the value of USAA's insureds' Med Pay claims; (ii) defendant USAA had policies and procedures in place which worked to delay claims as long as possible so that it could earn additional interest on its insureds' money; (iii) defendant USAA had policies and procedures in place which worked to reduce or eliminate the payout of Med Pay benefits to its insureds; (iv) defendant USAA had policies and procedures in place which worked to deceive its insureds and take away their rights; (v) defendant USAA had policies and procedures in place whereby it provided its insureds with low-ball offers (especially when presented with a Med Pay claim); (vi) USAA and AIS would not even actually review medical bills submitted by USAA's insureds, but instead would simply enter the bills into a computer program that would spit out dismissals and denials and would otherwise cause unnecessary and prejudicial delays to USAA's insureds; and (vii) defendant USAA knew its standing in the market was far from "exceptional."

15.     On or about December 24, 2014, plaintiff PAUL DEUTZ was driving his motor vehicle on La Orilla Road in San Diego, California and plaintiff NANCY DEUTZ was seated in the front passenger seat when they were involved in a collision caused by a third party (hereinafter referred to as the "Subject Incident"). Plaintiffs sustained significant injuries in the Subject Incident, and incurred a total of over one hundred fifty-nine thousand dollars ($159,000) in medical bills as a direct result of the Subject Incident. Among other injuries, plaintiff NANCY DEUTZ sustained blunt chest trauma, a sternum fracture, multiple rib fractures, a knee contusion, as well as neck/back/shoulder pain, and plaintiff PAUL DEUTZ suffered a concussion, congnitive impairment, cervical radiculopathy with numbness to his left arm and fingers, tinnitus and hearing loss, and right labral tear/shoulder pain.

16.     Plaintiffs were transported from the scene of the Subject Incident to the Emergency Department at Scripps Memorial Hospital by ambulance. Plaintiffs' vehicle was totaled in the Subject Incident. As set forth above, Plaintiffs' injuries from the Subject Incident were severe and life-threatening, and to this day Plaintiffs suffer from the injuries that resulted from the Subject Incident. Plaintiffs' medical providers have indicated that future medical care and treatment will be necessary for both Plaintiffs.

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

17.     The third party driver who struck Plaintiffs' vehicle, Barry Alexander Moores, was insured under an automobile liability insurance policy. The automobile liability insurance coverage for his automobile was five hundred thousand dollars ($500,000.00) per person and one million dollars ($1,000,000.00) per occurrence. On or about December 31, 2015, Plaintiffs settled their claims with Mr. Moores for payment of his policy limits.

18.     There was another driver who was apparently racing Mr. Moores at the time Mr. Moores' vehicle impacted Plaintiffs' vehicle. The insurer for the third party, William Rainey, paid Plaintiffs his policy limits of one hundred thousand dollars ($100,000) per person.

19.     Both Mr. Moores' insurance carrier and Mr. Rainey's insurance carrier relied upon Plaintiffs' medical treatment following the accident, and the medical special damages incurred therefore, in deciding to pay their respective policy limits to Plaintiffs. Unlike AIS and USAA, these third-party insurers were able to determine that Plaintiffs' treatment was reasonable and necessary and was causally-related to the Subject Incident.

20.     On January 29, 2015, Plaintiffs' counsel sent a letter of representation to USAA. A true and correct copy of the January 29, 2015 correspondence is attached hereto as **Exhibit "B."**

21.     On January 30, 2015, USAA acknowledged receipt of Plaintiffs' letter of representation. In its January 30, 2015 correspondence, a true and correct copy of which is attached hereto as **Exhibit "C,"** USAA states, "**We partner with a company called Auto Injury Solutions (AIS) to audit bills and ensure they are reasonable, necessary, and related to the accident**." USAA has a separate post office box in Daphne, AL so that all claim-related correspondence goes directly to its partner, AIS. USAA's adjuster sent Exhibit "B" from USAA's "1st Party Center of Excellence." Although operating from the same PO Box, AIS apparently makes no pretense about being part of USAA's "1st Party Center of Excellence."

22.     As of the date of the filing of this First Amended Complaint, USAA has paid to Plaintiffs a total of $29,527.71 out of $159,236.43 submitted to USAA and AIS under Plaintiffs' Med Pay claim:

a. Of the $75,930.42 in medical special damages incurred by Plaintiff PAUL DEUTZ that were submitted to USAA, USAA has paid $5,240.84. With a maximum Med Pay benefit of $50,000, USAA has thus failed to pay Mr. Deutz contract benefits due and owing of $44,759.16.

b. Of the $83,906.01 in medical special damages incurred by Plaintiff NANCY DEUTZ that were submitted to USAA, USAA has paid $24,286.87. With a maximum Med Pay benefit of $50,000, USAA has thus failed to pay Mrs. Deutz contract benefits due and owing of $25,713.13.

23.     USAA, relying on its partner, AIS, significantly delayed payment or, in many cases, completely denied payment outright in spite of repeated submission of required materials, and in many cases simply denied payment for false, fraudulent, and purely pretextual, made-up reasons. For numerous medical bills for treatment incurred on the day of the Subject Incident, USAA (via its partner, AIS) denied payment in its entirety as "documentation is needed to substantiate the relatedness of the treatment to the injury diagnosis for this loss" and/or "documentation is needed to support the medical necessity for **continued care** of treatment" (**emphasis** added). USAA and its partner, AIS, further declined payment, for treatment incurred on the day of the Subject Incident in the Emergency Department, on the grounds that "Documentation must include all records, such as patient history, evaluations, test results, progress notes, prescriptions, and treatment plan."

24.     Nowhere in the POLICY does USAA indicate it reserves the right to decline payment for fraudulent, specious, false, or arbitrary reasons, nor that it will instruct its "partner" to deny payment for fraudulent, specious, false, or arbitrary reasons.

25.     Similarly, nowhere in the POLICY does USAA indicate it reserves the right to deny payment for claims if its insureds' medical providers do not include with medical billing records "all records, such as patient history, evaluations, test results, progress notes, prescriptions, and treatment plan," nor that it will instruct its "partner" to deny payment based on these grounds.

/ / / /

26.     USAA and AIS, its "partner," at USAA's direction and in conduct ratified by USAA, created fraudulent, specious, false, and arbitrary requirements to deny payments to Plaintiffs, USAA's insureds, in order to delay and/or avoid payment of reasonable and necessary charges directly related to the Subject Incident. USAA and AIS concealed from USAA's insureds the fact that USAA and AIS had a system in place to systematically deny legitimate Med Pay claims that should have been timely paid. USAA and AIS further concealed from USAA's insureds the fact that USAA and AIS had a relationship whereby AIS was incentivized to systematically deny legitmate Med Pay claims that should have been timely paid. USAA and AIS further concealed from USAA's insureds that a computer program was systematically denying Med Pay claims, and/or that an actual medical provider was not reviewing the claims that were being systematically denied.

27.     USAA and its "partner," AIS, who by law have a duty to conduct an independent investigation of Plaintiffs' charges before approving or denying payment, initially denied Plaintiffs' request for payment of $1,330 for San Dieguito Ambulance on the date of the Subject Incident on the grounds that, "In order to make a reimbursement decision, documentation is needed to support the medical necessity for **continued care of treatment**. Documentation must include all records, such as patient history, evaluations, test results, progress notes, prescriptions, and treatment plans." Obviously, AIS's rigged computer program and/or its incompetent, inept, and deceitful Dr. Ponzio completely disregarded California law, as well as any applicable laws or standards of decency, in making such a preposterous denial of this charge. To reiterate, this is the ambulance that took the severely-injured Plaintiffs from the scene of the Subject Incident to the hospital on the date of the near-fatal collision, and USAA's policy, carried out by its henchman and partner, AIS, is to deny payment first and then make the Plaintiffs jump through hoops – which USAA created in contravention of the POLICY and California law – before maybe, possibly, and very belatedly authorizing certain payments, but ultimately denying most.

28.     In a concerted effort to deny or delay payment, USAA and its partner, AIS, treated each of Plaintiffs' medical records and bills as an individual submission, and then

declined payment for lack of documentation supporting the charges. USAA and AIS then denied payment on the grounds that they did not have the documentation needed to support the medical necessity of the individual procedure or charge, pretending that the volume of medical and billing records with which they were provided, related to and regarding Plaintiffs' ***entire*** treatment, didn't exist. USAA, through its partner, AIS, essentially created an insurmountable hurdle in that they required Plaintiffs to substantiate each charge as though these charges occurred in a vacuum and were unrelated to every other charge and record with which USAA and AIS had been provided.

29.     Neither USAA nor its partner, AIS, ever sought to request or subpoena Plaintiffs' medical records in order to substantiate payment. Similarly, neither USAA nor its partner, AIS, ever sought to have Plaintiffs examined by a California-licensed medical doctor (or any other doctor, for that matter) to determine the extent of Plaintiffs' injuries. Similarly, neither USAA nor its partner, AIS, ever sought to interview Plaintiffs in an attempt to determine what treatment was provided, when, or by whom. USAA and its partner simply decided to deny payment for false, fraudulent, specious, and purely made-up reasons, and then USAA made its own insureds file suit in order to collect benefits due them under the POLICY in spite of repeated attempts by Plaintiffs' counsel to get USAA to fairly, independently, and thoroughly investigate Plaintiffs' Med Pay reimbursement claims.

30.     Under Insurance Code 790.03(h):

The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

…

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

…

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

…

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

### III.

### FIRST CAUSE OF ACTION

### *Breach of Contract*

### *(Plaintiffs vs. Defendants USAA and/or DOES 1-25)*

31.  Plaintiffs hereby incorporate by reference each paragraph above as though set forth fully herein.

32.  Under the POLICY, defendant USAA agreed to provide Med Pay coverage to Plaintiffs. The POLICY provided that Plaintiffs were entitled to bring claims for fifty thousand dollars ($50,000) each for Med Pay. Plaintiffs paid premiums to USAA for this coverage so that they would be protected in the event they were ever involved in an injury-causing accident in which the third-party(ies) maintained insufficient liability insurance to fully cover their loss.

33.  Plaintiffs have complied with all requisite terms and conditions required of them under the POLICY, or have been excused from such performance due to Defendants' breaches of the insurance contract as alleged herein.

34.  Plaintiffs were involved in the Subject Incident in which they sustained significant and permanent injuries. Between April 15, 2015 and February 18, 2016, counsel for Plaintiffs sent no fewer than five letters to Defendants USAA and AIS seeking reimbursement for medical payments directly related to injuries Plaintiffs suffered in the Subject Incident.

35.     Defendants USAA and/or DOES 1 through 25 breached the contractual obligations they had with Plaintiffs under the POLICY when Defendants unreasonably and wrongfully refused to pay Plaintiffs' Med Pay benefits that they were entitled to receive.

36.     Of the $75,930.42 in medical special damages incurred by Plaintiff PAUL DEUTZ that were submitted to USAA, USAA has paid $5,240.84. With a maximum Med Pay benefit of $50,000, USAA has thus failed to pay Mr. Deutz contract benefits due and owing of $44,759.16.

37.     Of the $83,906.01 in medical special damages incurred by Plaintiff NANCY DEUTZ that were submitted to USAA, USAA has paid $24,286.87. With a maximum Med Pay benefit of $50,000, USAA has thus failed to pay Mrs. Deutz contract benefits due and owing of $25,713.13.

38.     Defendants USAA and/or DOES 1 through 25 breached their duties under the POLICY by, among other things, the following actions:

(a)     Failing to properly and timely issue payments for Plaintiffs' Med Pay claims;

(b)     Ignoring Plaintiffs' right to prompt payment of the entire benefits they paid for;

(c)     Failing to adopt and implement reasonable standards for the prompt processing of Med Pay claims;

(d)     Failing without proper cause to compensate Plaintiffs for Med Pay losses caused by third-party tortfeasors that are clearly covered by the POLICY;

(e)     Requiring Plaintiffs to proceed to litigation when both liability and the amount of damages are clear and thereby increasing the amount of Plaintiffs' attorney's fees and costs;

(f)     Failing and unreasonably refusing to pay Med Pay benefits due to Plaintiffs in a timely fashion;

(g)     Placing Defendants' own economic interests over and above those of Plaintiffs;

(h)     Failing to consider competent evidence in making offers;

(i)     Misrepresenting the evidence and making low-ball settlement offers to Plaintiffs;

(j)     Failing to promptly respond to Plaintiffs and refusing to communicate;

(k)      Engaging in unfair claim settlement practices, in violation of the applicable statutes and regulations, including, but not limited to, *Insurance Code section 790.03(h)* and the regulations pertaining thereto issued by the California Department of Insurance under the Fair Claims Settlement Practice Regulations; and

(l)      Other acts and omissions of which Plaintiffs are presently unaware, but which will be proved at time of trial.

39.      Defendants USAA and/or DOES 1-25 were put on specific notice of their breach and have been asked to cure their breach. Defendants have failed to cure and have failed to mitigate damages. Defendants USAA and/or DOES 1-25 breached their contractual obligations under the POLICY and are liable to Plaintiffs for all detriment and damages proximately caused by such breach, in an amount to be proven at the time of trial.

40.      Specifically and as a proximate result of Defendants' breach of contract, Plaintiffs have suffered, and continue to suffer, financial damage and hardship due to the Defendants' failure and unreasonable delay in paying the remaining Med Pay benefits due under the POLICY.

**IV.**

**<u>SECOND CAUSE OF ACTION</u>**

***Breach of the Implied Covenant of Good Faith and Fair Dealing***

***(Plaintiffs vs. Defendant USAA and/or DOES 1-25)***

41.      Plaintiffs hereby incorporate by reference each paragraph above as though set forth fully herein.

42.      Under the POLICY, defendant USAA agreed to provide Med Pay coverage to Plaintiffs, its express beneficiaries. Implied in the insurance POLICY was a covenant of good faith and fair dealing, pursuant to which, among other things, defendant USAA was required to give the interests of Plaintiffs equal consideration with its own interests, and to deal fairly, in good faith, and openly with Plaintiffs. Furthermore, defendant USAA was not to take steps to deny the benefits for which Plaintiffs had contracted. Plaintiffs detrimentally relied upon the contract of insurance and the covenants implied therein to protect them from damages caused

by third-party motorists who might cause them injury.

43.     Plaintiffs were involved in the Subject Incident, in which they sustained significant and permanent injuries. As set forth above, Plaintiffs settled their claims with the third-party drivers for payment of both drivers' full policy limits. Concurrently, Plaintiffs pursued their Med Pay claims with their own carrier, USAA. Ironically, they were treated more fairly, and infinitely more quickly, by the third-party carriers than they were by their own carrier, USAA, and its partner, AIS.

44.     Defendant USAA has and continues to unreasonably and wrongfully refuse to pay Plaintiffs the Med Pay benefits to which they are entitled.

45.     In spite of repeated demands by Plaintiffs, defendant USAA unreasonably and without proper cause or adequate investigation refused to fully and timely pay Plaintiffs' Med Pay benefits. Furthermore, defendant USAA has failed to reasonably handle and investigate the claims for Med Pay benefits and has engaged in practices in contravention of *Insurance Code § 790.03* and the regulations pertaining thereto, which are set forth in the Fair Claims Settlement Practice Regulations issued by the California Department of Insurance.

46.     Defendant USAA breached the covenant of good faith and fair dealing implied in the POLICY when it failed and refused to pay Plaintiffs' Med Pay benefits and acted to intentionally and unreasonably delay payment of those benefits. Defendant USAA, and/or DOES 1 through 25, breached their duty of good faith and fair dealing to Plaintiffs by, among other things:

(a)     Failing to properly and timely issue payments for Plaintiffs' Med Pay claims;

(b)     Ignoring Plaintiffs' right to prompt payment of the entire benefits they paid for;

(c)     Failing to adopt and implement reasonable standards for the prompt processing of Med Pay claims;

(d)     Failing without proper cause to compensate Plaintiffs for Med Pay losses caused by third-party tortfeasors that are clearly covered by the POLICY;

(e)     Requiring Plaintiffs to proceed to litigation when both liability and the amount of damages are clear and thereby increasing the amount of Plaintiffs' attorney's fees and costs;

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

(f)     Failing and unreasonably refusing to pay Med Pay benefits due to Plaintiffs in a timely fashion;

(g)     Placing Defendants' own economic interests over and above those of Plaintiffs;

(h)     Failing to consider competent evidence in making offers;

(i)     Misrepresenting the evidence and making low-ball settlement offers to Plaintiffs;

(j)     Failing to promptly respond to Plaintiffs and refusing to communicate;

(k)     Engaging in unfair claim settlement practices, in violation of the applicable statutes and regulations, including, but not limited to, *Insurance Code section 790.03(h)* and the regulations pertaining thereto issued by the California Department of Insurance under the Fair Claims Settlement Practice Regulations;

(l)     Partnering with AIS for the explicit purpose of eschewing independent investigation of Med Pay claims, so that Plaintiffs and all others similarly situated will have their claims unfairly adjusted by USAA and its partner, AIS; and

(m)     Other acts and omissions of which Plaintiffs are presently unaware, but which will be proved at time of trial.

47.     Defendant USAA engaged in despicable conduct, including (i) implementing policies and procedures which were designed to work to the detriment of its insureds, including its undisclosed partnership with AIS whereby USAA and AIS work collaboratively to reduce the value of USAA's insureds' Med Pay claims; (ii) implementing policies and procedures which were designed to delay claims as long as possible so that it could earn additional interest on its insureds' money; (iii) implementing policies and procedures, including partnering with AIS, which were designed to reduce or eliminate the payout of Med Pay benefits to its insureds; (iv) implementing policies and procedures which worked to deceive its insureds and take away their rights; (v) implementing policies and procedures whereby it provided its insureds with low-ball offers (especially when presented with a Med Pay claim in partnership with AIS); (vi) improperly failing to adequately and reasonably investigate Plaintiffs' Med Pay claims; (vii) failing and unreasonably refusing to pay benefits due to Plaintiffs under the

POLICY; (viii) failing to timely settle Plaintiffs' claims for Med Pay benefits; (ix) failing to comply with *Insurance Code section 790(a-h)* and the regulations pertaining thereto; and (x) putting its own interests ahead of Plaintiffs' interests. Defendant USAA's conduct was deliberate, calculated and intentional, and done in conscious disregard of the Plaintiffs' rights, and with an aim toward protecting the Defendant's economic interests at the expense of Plaintiffs' interests.

48.    Defendant USAA breached the covenant of good faith and fair dealing arising from the above-referenced POLICY and is liable to Plaintiffs for all detriment and damages proximately caused by such breach, which detriment includes Plaintiffs' costs to recover their Med Pay benefits from defendant USAA, emotional distress and bodily injury, and attorney's fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813, all in an amount to be proven at trial.

49.    The above-referenced breaches of the implied covenant of good faith and fair dealing were intentionally done with callous and conscious disregard for the rights of Plaintiffs, and were willful, malicious and oppressive, and designed to injure Plaintiffs. Such conduct was done as a course of business conduct by defendant USAA and with the prior knowledge, consent or subsequent ratification by an officer, director or managing agent of defendant USAA. Therefore, Plaintiffs are entitled to punitive and exemplary damages in an amount sufficient to punish defendant USAA, and DOES 1 through 25, for their wrongdoing, and to deter similar conduct in the future.

## V.

## THIRD CAUSE OF ACTION

### *Negligence*

### (Plaintiffs vs. Defendants AIS and/or DOES 26-50)

50.    Plaintiffs hereby incorporate by reference each paragraph above as though set forth fully herein.

51.    Defendants AIS and/or DOES 26-50 owed a duty to Plaintiffs, by way of AIS's partnership with USAA and the California Insurance Code, to use reasonable care in the

manner in which they carried out their responsibilities to, for, or on behalf of Plaintiffs, including but not limited to their expeditious handling and processing of Plaintiffs' Med Pay claims under the POLICY.

52.     Defendants AIS and/or DOES 26-50 breached the duties owed to Plaintiffs by, among other acts and omissions:

(a)     Failing to properly evaluate Plaintiffs' Med Pay claims;

(b)     Failing to timely evaluate Plaintiffs' Med Pay claims;

(c)     Failing to adopt and implement reasonable standards for the prompt processing of Med Pay claims;

(d)     Failing without proper cause to authorize compensation to Plaintiffs for Med Pay losses caused by third-party tortfeasors that are clearly reasonable, necessary, and causally-related to the Subject Incident;

(e)     Requiring Plaintiffs to proceed to litigation to recover benefits clearly due to Plaintiffs;

(f)     Failing and unreasonably refusing to authorize payment of Med Pay benefits due to Plaintiffs in a timely fashion;

(g)     Placing AIS's own economic interests over and above those of Plaintiffs;

(h)     Failing to consider competent evidence in denying or severely delaying Plaintiffs' Med Pay claims; and

(l)     Other acts and omissions of which Plaintiffs are presently unaware, but which will be proved at time of trial.

53.     As a proximate result of Defendants' negligence, Plaintiffs have suffered, and continue to suffer, losses and damages from Defendants' wrongful delay and denial of benefits owed under the POLICY, which include, but are not limited, to benefits for medical expenses, pain and suffering, pre-judgment interest, attorneys fees under the tort-of-another doctrine, and costs.

////

////

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

54.     As a further proximate result of Defendants' negligence, Plaintiffs have suffered, and continue to suffer, financial damage and hardship, including but not limited to the medical and health costs arising out of Plaintiffs' injuries from the Subject Incident.

55.     As yet a further proximate result of Defendants' negligence, Plaintiffs have suffered, and continue to suffer, emotional distress, anxiety, and worry.

## V.

## FOURTH CAUSE OF ACTION

### *Negligent Misrepresentation*

**(Plaintiffs vs. Defendants USAA, AIS and/or DOES 1-50)**

56.     Plaintiffs hereby incorporate by reference each paragraph above as though set forth fully herein.

57.     Defendants USAA, AIS, and/or DOES 1-50 knew that they had duties pursuant to Federal and State regulations and laws as insurers and/or insurers' partners to abide by the laws and act fairly with respect to USAA's insureds – Plaintiffs – and knew that the life, health, safety, and welfare of Plaintiffs would be at great risk if they failed to carry out such duties. Defendants USAA, AIS, and/or DOES 1-50 knew that they had to follow, among others, the requirements as set forth in *Insurance Code section 790 (a-h)*. Moreover, defendants USAA, AIS, and/or DOES 1-50 specifically knew that their failure to comply with their duties would result in serious personal injury, severe emotional distress, and/or bodily harm to Plaintiffs. Nevertheless, defendants USAA, AIS, and/or DOES 1-50 negligently failed to adhere to their clear-cut duties. Defendants' conduct was integral to their respective and collective business models, and Defendants were motivated by profit to act unlawfully towards Plaintiffs and other similarly-situated individuals over the last 5 years.

58.     In particular, and without limiting the generality of the foregoing, Defendants USAA, AIS, and/or DOES 1-50 breached duties they owed to Plaintiffs by:

Count 1 – subjecting Plaintiffs to defendants USAA, AIS, and/or DOES 1-50's ongoing and continuous violations of *Insurance Code section 790 (a-h)*;

/ / / /

Count 2 – misrepresenting pertinent facts and/or insurance policy provisions to Plaintiffs relating to coverages at issue;

Count 3 – repeatedly failing to acknowledge and promptly respond to communications with respect to claims arising under the POLICY;

Count 4 – repeatedly failing to adopt and implement reasonable standards for the prompt investigation and processing of Med Pay claims arising under USAA's insurance policies;

Count 5 – failing to affirm or deny coverage of Med Pay claims within a reasonable time after proof of loss requirements were completed and submitted by Plaintiffs;

Count 6 – not attempting in good faith to effectuate prompt, fair, and equitable settlements of Plaintiffs' claims, a case in which liability and damages are clearly in excess of Plaintiffs' applicable Med Pay coverage;

Count 7 – compelling Plaintiffs, and other similarly-situated individuals, to institute litigation to recover amounts due under the POLICY by offering substantially less than the amounts owed and ultimately recovered. Defendants USAA, AIS, and/or DOES 1-25 engage in this type of unlawful practice as part of their business model to harass their own insureds and gain profits, to the severe, repeated, and ongoing detriment of their insureds;

Count 8 – delaying the investigation or payment of claims;

Count 9 – running a minimum-expense operation for the sole purpose of increasing profits and undermining insureds' rights;

Count 10 – ignoring clear cut state and federal laws relating to their insureds' rights;

Count 11 – ignoring competent evidence in denying Plaintiffs' demands;

Count 12 – wrongfully delaying payment of Plaintiffs' claims and forcing them to suffer, which in the instant case nearly resulted in Plaintiffs losing their home;

Count 13 – engaging in a pattern and practice of unlawful claims activity over the past 10 year; and/or

Count 14 – violating the law to increase profits and harm insureds, including but not limited to Plaintiffs.

59.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs suffered personal injury, emotional distress, and financial losses, and are thus entitled to damages in an amount to be proven at the time of trial but in no event less than the jurisdictional minimum of this court.

## VII.

## FIFTH CAUSE OF ACTION

### *Willful Misconduct*

### (*Plaintiffs vs. Defendants USAA, AIS, and/or DOES 1-50*)

60.     Plaintiffs hereby incorporate by reference each paragraph above as though set forth fully herein.

61.     Defendants USAA, AIS, and/or DOES 1-50, knew that they had duties pursuant to Federal and State regulations and laws as insurers to abide by the laws and act fairly with respect to their insureds – Plaintiffs – and knew that the life, health, safety, and welfare of Plaintiffs would be at great risk if it failed to carry out such duties. Defendants USAA, AIS, and/or DOES 1-50 knew that they had to follow, among others, the requirements as set forth in *Insurance Code section 790 (a-h)*. Moreover, defendants USAA, AIS, and/or DOES 1-50 specifically knew that their failure to comply with their duties would result in serious personal injury, severe emotional distress, and/or bodily harm to Plaintiffs. Nevertheless, defendants USAA, AIS, and/or DOES 1-50 consciously, willfully, and recklessly failed to adhere to their clear-cut duties. Defendants' conduct was integral to their respective and collective business models, and Defendants were motivated by profit to act unlawfully towards Plaintiffs and other similarly-situated individuals over the last 5 years.

62.     In particular, and without limiting the generality of the foregoing, defendants USAA, AIS, and/or DOES 1-50 knowingly, recklessly, and with deliberate indifference and conscious disregard for the health, safety and well-being of Plaintiffs, breached duties they owed to Plaintiffs by:

Count 1 – knowingly subjecting Plaintiffs to defendants USAA, AIS, and/or DOES 1-50's ongoing and continuous violations of *Insurance Code section 790 (a-h)*;

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

Count 2 – knowingly and repeatedly misrepresenting pertinent facts and/or insurance policy provisions to Plaintiffs relating to coverages at issue;

Count 3 – knowingly and repeatedly failing to acknowledge and promptly respond to communications with respect to claims arising under the POLICY;

Count 4 – knowingly and repeatedly failing to adopt and implement reasonable standards for the prompt investigation and processing of Med Pay claims arising under USAA's insurance policies;

Count 5 – knowingly failing to affirm or deny coverage of Med Pay claims within a reasonable time after proof of loss requirements were completed and submitted by Plaintiffs;

Count 6 – not attempting in good faith to effectuate prompt, fair, and equitable settlements of Plaintiffs' claims, a case in which liability and damages are clearly in excess of Plaintiffs' applicable Med Pay coverage;

Count 7 – compelling Plaintiffs, and other similarly-situated individuals, to institute litigation to recover amounts due under the POLICY by offering substantially less than the amounts owed and ultimately recovered. Defendants USAA, AIS, and/or DOES 1-25 engage in this type of unlawful practice as part of their business model to harass their own insureds and gain profits, to the severe, repeated, and ongoing detriment of their insureds;

Count 8 – delaying the investigation or payment of claims;

Count 9 – running a minimum-expense operation for the sole purpose of increasing profits and undermining insureds' rights;

Count 10 – ignoring clear cut state and federal laws relating to their insureds' rights;

Count 11 – ignoring competent evidence in denying Plaintiffs' demands;

Count 12 – wrongfully delaying payment of Plaintiffs' claims and forcing them to suffer, which in the instant case nearly resulted in Plaintiffs losing their home;

Count 13 – engaging in a pattern and practice of unlawful claims activity over the past 10 year; and/or

Count 14 – violating the law to increase profits and harm insureds, including but not limited to Plaintiffs.

63.     The wrongful, despicable, reckless, oppressive and malicious conduct by defendants USAA, AIS, and/or DOES 1-50 was actually carried out, committed by, and/or ratified by managing agents of Defendants' business entities, including, but not limited to, Defendants themselves and/or Defendants' Officers, Directors, Partners, Administrators, and/or Managing Agents.

64.     As a direct and proximate result of Defendants' reckless neglect and willful misconduct as alleged above, Plaintiffs suffered personal injury, emotional distress, and financial losses, and are thus entitled to damages in an amount to be proven at the time of trial but in no event less than the jurisdictional minimum of this court.

65.     As a further result of the fraudulent, reckless, and willful misconduct of defendants USAA, AIS, and/or DOES 1-50, Plaintiffs seeks recovery of their fees and costs in bringing this action against their insurer for its unlawful misconduct pursuant to applicable law.

66.     As a further direct and proximate result of Defendants' reckless neglect and willful misconduct which, as pled above, was done in conscious disregard for Plaintiffs' well-being, Plaintiffs are entitled to an award of punitive damages against defendants USAA, AIS, and/or DOES 1-50 under *Civil Code §3294*, in an amount according to proof at trial.

**WHEREFORE**, Plaintiffs PAUL DEUTZ and NANCY DEUTZ pray that, after due proceedings, judgment be rendered in their favor as against defendants USAA, AIS, and/or DOES 1-50, and each of them, as follows:

1.     For compensatory damages including, but not limited to, pain and suffering and emotional distress damages, in an amount to be determined at time of trial;

2.     For economic damages which include, but are not limited to, attorney's fees, expenses and other costs incurred by Plaintiffs in having to initiate litigation against defendants USAA, AIS, and/or DOES 1-50 to force them to pay POLICY benefits due under the POLICY's Med Pay coverage;

3.     For *Brandt* attorney's fees (as against USAA and DOES 1-25 only);

4.     For costs of suit incurred herein;

5.     For punitive damages according to proof (as against USAA and DOES 1-25 only);

6.     For such other and further relief as this Court deems just and proper.

DATED:  September 9, 2016                    LAW OFFICES OF ROBERT HAMPARYAN

By:____s/ Robert Hamparyan_____
Robert Hamparyan, Esquire
Attorney for Plaintiffs
PAUL DEUTZ and NANCY DEUTZ

DATED:  September 9, 2016                    THE KINDLEY FIRM, APC

By:___s/ George R. Kindley_____
George R. Kindley, Esquire
Henry Harmeling, Esquire
Attorneys for Plaintiffs
PAUL DEUTZ and NANCY DEUTZ

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4        PLEASE TAKE NOTICE that Plaintiffs PAUL DEUTZ and NANCY DEUTZ hereby

5   demand a trial by jury of the above-entitled action.

6   DATED:  September 9, 2016            LAW OFFICES OF ROBERT HAMPARYAN

7

8                                        By:____s/ Robert Hamparyan_____
                                            Robert Hamparyan, Esquire
9                                           Attorney for Plaintiffs
                                            PAUL DEUTZ and NANCY DEUTZ
10

11  DATED:  September 9, 2016            THE KINDLEY FIRM, APC

12

13                                       By:___s/ George R. Kindley_____
                                            George R. Kindley, Esquire
14                                          Henry Harmeling, Esquire
                                            Attorneys for Plaintiffs
15                                          PAUL DEUTZ and NANCY DEUTZ

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' First Amended Complaint for Damages; Demand for Jury Trial*